| 79 | 387 |
| 88 | 11 |
| 79 | 387 |
| 105 | 222 |
| 79 | 387 |
| 120 | 396 |

## HARDEMAN vs. ENGLISH & HUGUENIN.*

1. On the trial of a suit against warehousemen to recover the value of certain cotton which had been burned, and which plaintiff alleged they had agreed to keep insured for his benefit, but had failed to do so, proof, in their behalf, that it was their custom to insure cotton only to the extent of the advances they had made thereon and for their own benefit, unless instructed by the customer to insure for full value, was primarily inadmissible; but after testimony had been allowed, without objection, in favor of plaintiff, tending to show it was their custom to insure cotton on which they had made advances to its full value, such proof was properly admitted.

2. A report of the testimony alleged to have been given by a witness on a former trial, certified to be a true report of what the witness then swore, by the court stenographer, who took down and tran-

*SIMMONS, J., being disqualified, Judge LUMPKIN, of the Northern circuit, was designated to preside in his stead.

scribed notes thereof, without further proof of its genuineness and correctness, is not competent evidence. (Head-notes by the court.)

February 6, 1888.

Evidence. Custom. Practice in Superior Court. Stenographers. Before Judge SIMMONS. Bibb Superior Court. April Term, 1887.

Reported in the decision.

HARDEMAN & DAVIS; HILL & HARRIS; DESSAU & BARTLETT, for plaintiff in error.

R. K. HINES; R. F. LYON; BACON & RUTHERFORD, for defendants.

LUMPKIN, Judge.

Hardeman brought suit against English & Huguenin, alleging, in substance, that they were cotton factors and warehousemen in the city of Macon, and at their special instance and request, and upon the faith of certain representations and promises made to him by them, he stored with them seventy-one bales of cotton for safe-keeping and sale for his account; that they stated to plaintiff they always insured the cotton of their customers for the full amount of its value whenever advances were made thereon to the owners thereof, and this representation constituted a material consideration and inducement to plaintiff to store his cotton with them, as he knew he would often require advancements; that he stored his said cotton with them, and they undertook to keep and preserve it on the terms and conditions aforesaid, and actually agreed, at the time of its receipt, to keep it insured for his benefit for the full value thereof, in case any advance should be made to him by them thereon; that he did thereafter procure advances, and defendants at various times assured him his cotton was insured to its full value for his benefit, and for this reason he did not insure it himself as he would other-

wise have done; that the cotton was afterwards consumed by fire, when defendants informed plaintiff it had not been insured to its full value, but only for their own benefit to the extent of the advances they had made, denied their aforesaid representations and undertakings, and refused to pay him the value of said cotton, which this action is brought to recover.

The defendants filed several pleas, which, in substance, amount to the general issue. The testimony was voluminous and conflicting, and as the case is to be tried again, it is not deemed proper at this time to comment upon or intimate any opinion concerning it. For the same reason, the weight and character of the newly discovered testimony relied on will not be herein discussed. The jury found for the defendant, and a motion for new trial, predicated on various grounds, was overruled by the court below.

1. The code declares, in section 1, par. 4, that "the custom of any business or trade shall be binding only when it is of such universal practice as to justify the conclusion that it became, by implication, a part of the contract." Again, section 3805 provides that " evidence of known and established usage is admissible," etc.

To make proof of a custom as such proper testimony, it should appear by the proof itself that such custom is a general one, and that it is so well known and recognized within the sphere of its operation, as to be usually considered a part of all contracts made in that particular locality, in business transactions to which such custom relates. A custom, for instance, which was observed and practiced in the usual course of their dealings by all warehousemen in the city of Macon, and which was well-known and understood generally by persons sending cotton to such warehousemen, would be one of which proof could be properly introduced on a trial of this kind. But evidence of the alleged custom of a particular firm in its dealings with its own customers should not primarily be allowed. To do

so, as a rule, would be of uncertain propriety, because all merchants have different rules and transact business on different terms and conditions with different customers and classes of customers. As was held in the case of *Mayes vs. Power et al.*, decided during the present term, evidence that it was the universal custom of an intestate to lend money without taking notes for it, was inadmissible, but evidence that the intestate had previously dealt with the defendant in that case in the same way, was proper; so it would seem, in this case, that previous dealings between the defendants and the plaintiff would illustrate the issue now pending between them, but what English & Huguenin did in their transactions with others would not. It appeared, however, that the plaintiff had been allowed, without objection, to prove what defendants did in their dealings with others, and after the door had been thus opened, it was right to allow defendants to prove that their custom was otherwise than as alleged. But for this, the testimony objected to should have been rejected. The court did reject the testimony of a witness named Finney as to certain dealings between him and the defendants; and as this testimony was irrelevant for reasons already herein stated, the court did right in refusing to admit it.

2. Hardeman was a most material and important witness for himself in this case. On a former trial thereof, which resulted in a mistrial, he had testified at length. Notes of his testimony on that trial had been taken down and transcribed by the stenographer of the court. At the last trial, the court allowed a report of portions of that testimony, certified by the stenographer to be a true report, without further proof, to be introduced in evidence over Hardeman's objection. It was contended that this testimony was admissible under section 3816 of the code. We do not think so. The stenographer is not such an officer as is contemplated by that section. He has no fixed or designated office in which he is required to keep records, documents or papers of file, nor is he required to keep at

all records or official papers.   He has no seal of office, and there is nothing in the law defining his duties which indicates that the reports he makes of testimony shall become permanent and final public records, and it is certified copies of such records as these the law intends shall be received as evidence.   It is true the statute does prescribe the stenographer's compensation for reports of evidence furnished by him to parties at their request, but these reports are not binding upon any one or authentic parts of the record until approved by the court.   It was, therefore, error to admit this testimony; and the question is, did so doing tend to injure the plaintiff's case ?   The effect of it, if true, was to impeach him, to disprove his testimony on the trial, and to place him in the attitude of having occupied, at the former trial, a position entirely inconsistent with that he occupied at the trial now under review.   It was insisted that, even if illegal, this testimony could not have injured the plaintiff, because, as alleged, he himself admitted on the stand all the stenographer's report imputed to him.   This, however, does not appear, and besides, we cannot undertake to say what effect this report produced on the minds of the jury, or what influence it exerted in making the verdict. It may have injured plaintiff, or it may not, and as the record shows it was a warmly contested case, with a considerable amount of testimony on both sides, and much of it decidedly conflicting, we think a new trial should be had.

Judgment reversed.